Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. R. J. Reynolds was a qualified, self-insured employer, administered by Kemper Insurance under the terms and provisions of the Act.
4. The employee-employer relationship existed between plaintiff and defendant-employer at the time of the alleged injury.
5. Plaintiff is a fifty-six year old male with a twelfth grade education.
6. Plaintiff's average weekly wage is $890.80, yielding a maximum compensation rate of $492.00.
7. Plaintiff received 100 percent of his salary from 7 July 1996 through 17 April 1997. Plaintiff received 50 percent of his salary of $1,928.34 per month from 19 April 1997 through present. These benefits are provided by and paid for by RJR.
The Pre-Trial Stipulations dated 12 February 1998 submitted by the parties at the hearing are incorporated by reference.
In addition, the parties stipulated into evidence the following:
 1. Form 19 Employer's Report of Injury to Employee, dated 8 May 1996.
2. Reimbursement agreement, dated 9 October 1996.
 3. 103 pages of medical records and employment records which were submitted after the hearing.
***********
Based upon all of the competent evidence in the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a fifty-six-year-old high school graduate, who was employed by defendant for thirty-seven years. During the last 12 to 13 years of his employment with defendant, plaintiff drove a tractor trailer for the company.
2. On 11 April 1996, plaintiff drove his truck to pick up a load of cigarettes. A conveyor system began loading the truck automatically, but there was some sort of malfunction after only half of the cigarettes had been loaded. Consequently, plaintiff stepped up unto a small platform to check the problem. When plaintiff came back down, he slipped on an oil spot and hit his left upper torso and left knee on the pavement. After plaintiff's fall, a nurse in defendant's medical department saw him for complaints of pain behind his left knee and in his left upper posterior rib cage area. The nurse gave plaintiff ibuprofen to relieve his pain and directed plaintiff to return to the medical department the next day.
3. When plaintiff returned to the company nurse on 12 April 1996, he complained of pain in his mid-lumbar region, in addition to the areas mentioned the day before. However, the pain was not severe, and he was able to continue working in his regular job. Plaintiff was treated with medication and on 25 April 1996, and he was referred for two weeks of physical therapy.
4. Hubert Bonfili, M.D., the company doctor, examined plaintiff on 14 May 1996. Plaintiff complained of some low back discomfort at night, especially when turning, and some stiffness in the mornings, but indicated that he had no problems as the day progressed. Plaintiff reported his left knee pain had resolved. Dr. Bonfili advised plaintiff that he probably had some degenerative arthritis.
5. On 18 May 1996, plaintiff went to Daniel J. Hurst, M.D., at Winston-Salem Health Care with complaints of right shoulder and low back pain. Plaintiff reported to Dr. Hurst that he had fallen at work approximately three weeks before. Dr. Hurst prescribed pain mediation for plaintiff on that visit. On 24 May 1996, plaintiff saw Gerald B. Hogsette, Jr., M.D., his regular treating physician. Plaintiff informed Dr. Hogsette of his fall in late March, which injured his left flank and low back. Plaintiff further stated that the pain had resolved within two weeks of the fall, and that he had subsequently developed pain in his right shoulder which had progressed to include his entire arm. Dr. Hogsette diagnosed plaintiff with a cervical radiculopathy and treated him conservatively with medication and a cervical collar. Physical therapy was ordered, but plaintiff did not follow through with that recommendation.
6. Plaintiff remained symptomatic and asked to be referred to Louis Pikula, M.D., a neurosurgeon. Dr. Hogsette ordered an MRI, which revealed a disc protrusion at C4-5 with associated spinal cord abutment. Dr. Hogsette then referred plaintiff to Dr. Pikula, who examined plaintiff on 12 June 1996. Dr. Pikula continued conservative treatment for a couple of weeks, but then scheduled surgery because plaintiff's symptoms were progressing. On 2 July 1996, plaintiff underwent surgery to decompress and fuse the C4-5 interspace.
7. Dr. Pikula reported that plaintiff did very well following the operation. On 4 September 1996, plaintiff was released to return to work without restrictions. However, plaintiff needed the approval of Dr. Bonfili to return to work for defendant. When plaintiff saw Dr. Bonfili on 12 September 1996, he indicated that he still had pain in his neck and right arm. Plaintiff was also on intermittent pain medication, which had some drowsiness side effects. Consequently, Dr. Bonfili would not allow plaintiff to return to work as a truck driver for defendant. Defendant did not offer plaintiff another position, and plaintiff did not return to work at any time prior to the date of hearing before the deputy commissioner. Plaintiff did not look for employment elsewhere.
8. Dr. Bonfili recommended that plaintiff apply for long-term disability and wrote to Aetna, the insurance company, with his recommendation. Because of the lack of restrictions from the treating surgeon, plaintiff was sent by Aetna to neurologist Carlo P. Yuson, M.D., for another opinion. Dr. Yuson examined plaintiff on 27 January 1997 and noted inconsistencies on examination. He did not find any neurologic abnormality to explain plaintiff `s continuing complaints of symptoms and indicated that there appeared to be a disparity between the objective findings and the subjective complaints. Dr. Yuson saw no reason why plaintiff could not return to his former job as a truck driver. Nevertheless, Dr. Bonfili still did not release plaintiff to return to his former employment.
9. Plaintiff did not see Dr. Pikula between 4 September 1996 and 12 May 1997. Plaintiff was treated in the interim by Dr. Hogsette for new complaints of pain at the junction of the thoracic and lumbar spine. On 12 May 1997, plaintiff returned to Dr. Pikula with complaints of burning and tingling in both arms, some neck pain, burning in both legs, and low back pain. An MRI of his cervical spine was within normal limits. Since plaintiff's complaints were not in a true neurologic distribution, Dr. Pikula considered that plaintiff might have a peripheral neuropathy. Plaintiff's ongoing reported symptoms were not attributed to a cervical disc problem.
10. On 11 April 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. The fact that he slipped and fell constituted an unusual occurrence which interrupted his regular work routine.
11. As a result of this injury by accident, plaintiff injured his left knee and the area of his left upper torso at the posterior ribcage. The pain plaintiff experienced in those areas was not disabling and resolved with conservative treatment in the next few weeks.
12. Plaintiff did not develop pain in his right shoulder, neck, or arm until one month or more following his injury. Plaintiff reported previous difficulties in his neck and trapezius muscles when he had undergone a physical by Dr. Hogsette on 2 October 1995. Consequently, the causal relationship between plaintiff's work injury and the cervical disc rupture for which he underwent surgery was questionable, and expert medical evidence on the issue of causation was required. Neither party obtained a causation opinion from Dr. Pikula, the treating surgeon. Plaintiff offered the opinion of Dr. Hogsette, who would not state, to a reasonable degree of medical certainty, that plaintiff's cervical disc condition resulted from the accident. Dr. Bonfili expressed his opinion that, although a causal relationship was possible, it was not likely. Consequently, plaintiff has not proven that the cervical spine condition for which he ultimately underwent surgery was a proximate result of his 11 April 1996 injury by accident.
13. Plaintiff did not sustain any temporary total or permanent partial disability as a result of his 11 April 1996 injury at work. Plaintiff continued working after the injury until the end of June, when he had neck surgery.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 11 April 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. The cervical spine condition, for which plaintiff was treated beginning in May 1996, was not a proximate result of the injury by accident of 11 April 1996, and he is not entitled to compensation under the Act for that condition. G.S. § 97-2 etseq.; Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
3. Plaintiff did not sustain any temporary total or permanent partial disability as a result of his injury by accident on 11 April 1996 and, therefore, is not entitled to compensation for disability. G.S. § 97-29; G.S. § 97-31.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from his injury by accident, as may be reasonably required to effect a cure or give relief, excluding treatment for the cervical condition. G.S. § 97-2(19); G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
2. Plaintiff is not entitled to compensation under the Act for his cervical spine condition.
3. Defendants shall pay the costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER